I concur in the conclusion that the plaintiff, Rev. John Phelps, is the "initiating party, " as that term is used in Rule 6 of the American Arbitration Association's Commercial Arbitration Rules. That rule was incorporated by reference into the arbitration clause of the parties' purchase agreement. I write separately to express my concern that the factual circumstances that exist in this case present the question whether Reverend Phelps voluntarily, that is, knowingly and intelligently, consented to arbitration.
After this Court denied the mandamus petition filed by Reverend Phelps in this case, see Ex parte Phelps, 672 So.2d 790 (Ala. 1995), he moved the trial court to "restore *Page 39 
[the] case to the active docket and set it for a jury trial," on the ground that Dan Tucker Auto Sales, Inc. ("Dan Tucker"), had initiated the arbitration procedure but had not paid the filing fee. On February 28, 1996, Jefferson County circuit Judge Thomas A. Woodall denied that motion. On June 26, 1996, Dan Tucker moved the court to dismiss the action for "failure to prosecute . . . in a timely manner."
On July 23, 1996, Revelend Phelps moved the trial court to reconsider its order denying his motion to "restore [the] case to the active docket." He supported this motion with his own affidavit, stating in part:
 "2. I am the plaintiff in that lawsuit filed against defendants in this matter. I am a minister with the Crestline Cumberland Presbyterian Church. My annual income is approximately $19,000.00. I have incurred significant expenses in purchasing and repairing the vehicle involved in this case. I also have expended sums in reimbursement of expenses incurred in the litigation of this case.
 "3. It is my understanding if this case is to go to arbitration I must pay the sum of $1,500.00. It would result in a substantial hardship to me to pay the sum required to send the case to arbitration. If I am required to pay this sum I am not sure that I would be able to proceed with arbitration. This might effectively deny me the right to seek redress for the claims made against the defendants in this case.
 "4. I would respectfully request the court to order that the defendants pay the sum required for the arbitration. [They] requested the arbitration and thus should be required to pay the sum required for arbitration."
(Emphasis added.)
Subsequently, Judge Woodall entered the following order:
 "The court has considered [the] plaintiff's motion to reconsider and the affidavit attached thereto. It appears that the payment of a filing fee for arbitration would put a substantial and undue burden and hardship upon the plaintiff, a man of fairly limited means.
Therefore, the motion to reconsider is granted, the court ordering as follows:
 "1. All filing fees for arbitration shall be paid by the defendants who sought to compel arbitration.
 "2. All other expenses of arbitration shall be borne by the party causing the expense to be incurred;
 "3. The court reserves the right to reallocate responsibility for the filing fees upon completion of the arbitration; and
 "4. This case is continued on the Administrative Docket for six (6) months to allow the completion of arbitration. Plaintiff's counsel shall provide a status report by January 29, 1997, or else the case shall be dismissed with prejudice at plaintiff's costs."
(Emphasis added.) Dan Tucker then petitioned this Court for a writ of mandamus directing Judge Woodall to vacate his order directing it to pay the fees necessary to initiate arbitration proceedings.
The facts of this case illustrate one of the many consequences — altogether hidden from consumers — of executing a contract containing an arbitration provision. The ability of consumers "to acquire basic goods and services" has, with increasing frequency, become dependent upon their acquiescence to written provisions requiring them to consent to arbitration and, thereby, to waive their rights to a trial by jury as guaranteed by U.S. Const. amend. VII, as to any claim that "may accrue to them" as a result of the transaction. Allstar Homes, Inc. v.Waters, 711 So.2d 924, 933 (Ala. 1997) (Cook, J., concurring specially). In the typical consumer credit transaction, consumers are first apprised of the necessity of this waiver after they have already expended consider able time and expense in negotiating the essential terms of their bargain. Id. at 933. A "contract" that requires consumers to acquiesce this manner is, in fact, "punitive, " because its rejection at that point in the transaction would result in the forfeiture of the time and expense a consumer has already incurred in the bargaining process. A "contract" to which a consumer is thus forced to acquiesce is adhesive — it is not truly voluntary. Id. at 933. *Page 40 
But "volition is the sine qua non," not only of an effective waiver but of the constitutionality of the Federal Arbitration Act, 9 U.S.C. § 2 ("the FAA"), which requires specific performance of written arbitration provisions. Allstar Homes, 711 So.2d at 933.
In consumer cases such as this one, although the consumer's attention may be drawn to the fact that his "contract" contains an arbitration provision, it is seldom, if ever, directed to the fact that he will have to do what will, in many cases, be prohibitively expensive, in order to obtain any review of his claim. This is the essence of Reverend Phelps's affidavit testimony, specifically:
 "It is my understanding if this case is to go to arbitration I must pay the sum of $1,500.00. It would result in a substantial hardship to me to pay the sum required to send the case to arbitration. If I am required to pay this sum I am not sure that I would be able to proceed with arbitration. This might effectively deny me the right to seek redress for the claims made against the defendants in this case."
(Emphasis added.) In other words. Reverend Phelps asserts that although he may have been aware of the existence of the arbitration provision at the time this contract was executed, he was only subsequently confronted with the substance of the requirement to arbitrate, in this case, the cost of initiating the proceedings — a substance he had not contemplated and for which he had not bargained. The fact that this cost is entirelyhidden from the consumer is merely another example of evidence — but a clear one — that the consumer did not "agree," in a knowledgeable and intelligent manner, to the arbitration provision with the volition necessary to render the provision enforceable.
As the evidence in this case illustrates, a consumer not only must acquiesce in arbitration, but must, pursuant to the Rules of the American Arbitration Association ("AAA"), also prepay the fee to commence arbitration. The fee is substantial, as the following fee schedule, published as a part of the AAA's Commercial Arbitration Rules, illustrates:
"ADMINISTRATIVE FEES
 "The administrative fees of the AAA are based on the amount of the claim or counterclaim. Arbitrator compensation is not included in this schedule. Unless the parties agree otherwise, arbitrator compensation and administrative fees are subject to allocation by the arbitrator in the award.
"Filing Fees
 "A nonrefundable filing fee is payable in full by a filing party when a claim, counterclaim or additional claim is filed, as provided below.
"Amount of Claim Filing Fee
 "Up to $10,000 ........................................... $500 Above $10,000 to $50,000 ................................. $750 Above $50,000 to $100,000 .............................. $1,250 Above $100,000 to $250,000 ............................. $2,000 Above $250,000 to $500,000 ............................. $3,500 Above $500,000 to $1,000,000 ........................... $5,000 Above $1,000,000 to $5,000,000 ......................... $7,000
 "When no amount can be stated at the time of filing, the minimum fee is $2,000, subject to increase when the claim or counterclaim is disclosed.
 "When a claim or counterclaim is not for a monetary amount, an appropriate filing fee will be determined by the AAA.
 "The minimum filing fee for any case having three or more arbitrators is $2,000.
 "The administrative fee for claims in excess of $5,000,000 will be negotiated."[4]
These fees are subject to change, and the fees that are "applicable" are those that are "in effect when the fee or charge is incurred." Rule 48. Indeed, the schedule currently applicable requires Reverend Phelps to prepay $2,000 — that is $500 more than would have been required at the time he filed his affidavit.
Although I concur in the holding that Reverend Phelps is the initiating party, I have serious reservations as to whether he voluntarily, that is, knowingly and intelligently, consented to arbitration, thereby waiving his right to trial by jury. Because, however, he has not made that specific argument, this case is not postured for resolution of that question. Under the posture of this particular case, therefore, I agree that the petitioner is entitled to a writ of mandamus.
[4] This fee schedule became effective July 1, 1996. *Page 41